1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

JACKIE ROBINSON,

                                    Petitioner,

    vs.

STEPHEN MAYBERG,

                                    Respondent.

CASE NO. 09cv346-IEG(POR)

**Order Denying Petition for Writ of Habeas Corpus; Granting in Part Certificate of Appealability**

　　　Petitioner Jackie Robinson, a state prisoner proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his December 14, 2006 involuntary commitment to the custody of the California Department of Mental Health ("DMH") for an indeterminate term.  The trial court, in San Diego County Superior Court Case No. SDC153907, ordered Petitioner be committed under California's Sexually Violent Predator Act ("SVPA"), Cal. Welf. & Inst. Code §§ 6600 *et seq*., after a jury unanimously found beyond a reasonable doubt that Petitioner was a sexually violent predator ("SVP") as defined in that statute[1].  Respondent has filed an answer to the petition and lodged the state court record.  Petitioner has filed a traverse.[2]

---

　　　[1]A "sexually violent predator" is one "who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."  Cal. Welf. & Inst. Code § 6600(a)(1).

　　　[2]In the interests of justice, on March 11, 2020 the Court withdrew the reference of this case to Magistrate Judge Louisa Porter for issuance of a Report and Recommendation pursuant to Local Civil Rule HC.2.

***Procedural History***

The San Diego County District Attorney filed a petition pursuant to the SVPA on April 8, 2003, alleging Petitioner was a SVP based upon his January 24, 1992 conviction on four counts of committing lewd and lascivious acts upon a child under the age of 14, and his January 24, 2001 conviction for failing to register as a sex offender. [Lodgment No. 1, Clerk's Transcript ("CT"), 1-67.] According to the law in effect at that time, the District Attorney sought to have Petitioner committed to the DMH for two years. [CT 1.] Following a hearing on June 4, 2003, the court found probable cause to proceed with the petition. However, the court released Petitioner to the custody of the San Bernardino County Sheriffs Department to face charges based upon his January 3, 2003 arrest in that County for annoying or molesting a minor under the age of 18 in violation of the terms of his parole. [CT 293; Unpublished Opinion of California Court of Appeal ("Cal. Ct. App. Op."), filed August 8, 2008, Lodgment No. 7, p. 11.] Petitioner waived time for trial with regard to the San Diego County Superior Court SVPA petition in order to resolve the San Bernardino County charges. Petitioner entered a plea of *nolo contendere* to the San Bernardino County charge in late July 2004. [Cal. Ct. App. Op., p. 14.] On March 4, 2005, the San Bernardino County Superior Court sentenced Petitioner to a negotiated mitigated prison term of 32 months. [Id., p. 17.]

Petitioner agreed to a series of continuances of the San Diego County SVPA petition proceedings through September 15, 2006. [CT, 293-318.] On September 15, 2006, Petitioner filed a written motion to enforce an agreement he claimed the parties entered into at the June 4, 2003 probable cause hearing. [Id., p. 18; CT 318-319.] Petitioner argued that the San Diego County District Attorney at the June 4, 2003 probable cause hearing agreed to dismiss the SVPA petition if the San Bernardino County court imposed any prison time on the annoying or molesting a minor charges. Following an evidentiary hearing, the court denied Petitioner's motion on September 18, 2006. [CT 320-321.]

A jury trial commenced on the SVPA petition in San Diego County Superior Court on September 20, 2006. [CT 325.] The trial ended on September 28, 2006, when the jury reported they were hopelessly deadlocked. The court declared a mistrial. [CT 339-340.]

On October 3, 2006, anticipating a change in the law with regard to commitment of SVPs, the San Diego County District Attorney filed an amended petition alleging Petitioner was a SVP and requesting that the court commit Petitioner to the DMH for an indeterminate term. [CT 198-203.]  Trial once again commenced on December 4, 2006.  [CT 346-347.]  On December 13, 2006, the jury unanimously found Petitioner to be a SVP.  [CT 358-361.]  Based upon the provisions of Proposition 83, passed by California voters in November of 2006, the court ordered Petitioner be committed to the DMH for an indeterminate term. [CT 288-289.]

Petitioner filed a direct appeal, and also filed a petition for a writ of habeas corpus in the California Court of Appeal.  [Lodgment Nos. 2 and 3.]  The Court of Appeal consolidated the matters, and affirmed the trial court's judgment and commitment by unpublished opinion filed August 8, 2008.  [Lodgment No. 7.]  Petitioner filed a petition for review in the California Supreme Court.  [Lodgment No. 8.]  The California Supreme Court denied the petition, without comment, on November 12, 2008. [Lodgment No. 9.]

Petitioner timely filed this current petition on February 20, 2009.  Petitioner asserts the following grounds for relief: (1) Petitioner's indeterminate commitment to the custody of the Department of Mental Health violated his constitutional right to due process of law; (2) the judgment should be reversed because Petitioner's indeterminate commitment to the custody of the Department of Mental Health renders the SVPA punitive in nature in violation of the ex post facto clause; (3) the judgment should be reversed because Petitioner's indeterminate commitment to the custody of the Department of Mental Health renders the SVPA punitive in nature and violates the prohibition against cruel and unusual punishment; (4) the judgment must be reversed because Proposition 83 violated the single subject rule applicable to ballot initiatives; (5) Petitioner's indeterminate commitment with limited judicial review of his custodial status violates the equal protection clause of the Fourteenth Amendment; (6) Petitioner's Fifth and Fourteenth Amendment due process rights were violated when the trial court refused to enforce his plea bargain; (7) the trial court violated Petitioner's Fifth, Sixth, and Fourteenth Amendment rights when it failed to grant a mistrial when Petitioner's key witness failed to testify; (8) the trial court violated Petitioner's constitutional rights to due process and fair trial by refusing to exclude inflammatory

1    evidence; and (9) cumulative error requires reversal.

2                              ***Factual Background***

3         Petitioner was 18 years old in 1992 when he pled guilty to four counts of committing lewd

4    and lascivious acts against four boys under the age of 14.  [Cal. Ct. App. Op., p. 5.]  The first

5    victim, Jason, was a 9-year-old boy who lived next door to Petitioner and who played video games

6    at Petitioner's house. Petitioner sodomized Jason on about 20 occasions, and digitally penetrated

7    Jason's anus on 3 other occasions.  [Id.]  The second victim, Jimmy, was an 11–year-old boy with

8    whom Petitioner maintained a close friendship over the course of three years prior to May of 1991.

9    Jimmy would earn "points" by engaging in sexual activity with Petitioner[3], and could exchange the

10   points for video games and other items. [Id.. pp. 5-6.]

11        The third victim, Thomas, was a 10-year-old boy who Petitioner sodomized on more than

12   one occasion.  Petitioner would give Thomas money, food, or treats each time he sodomized him.

13   [Id., p.6.]  The fourth victim, Mark, was a 9-year-old boy who Petitioner fondled on the buttocks.

14   On one occasion, Petitioner pulled Mark's underpants down while Mark was pinned against the

15   bed, and smelled and touched Mark's buttocks. [Id.]

16        After Petitioner was released from prison on parole in August 1993, he remained out of

17   custody until 1995, when he committed a non-sexual offense.  Petitioner returned to prison until

18   August 1999, when he was again released.  After his release in August 1999, Petitioner failed to

19   report to his parole officer and failed to register as a sex offender. He, instead, lived in a homeless

20   shelter under an alias and false Social Security number.  Petitioner was re-arrested for these

21   offenses in December 1999.  [Id. p. 7.]

22        Petitioner was again released from custody in June 2002.  In January 2003, Petitioner was

23   arrested in San Bernardino County and charged with annoying or molesting a minor with a prior

24   sexual offense.  In violation of the conditions of his parole, Petitioner had been corresponding in

25   an online chat room with Marcus, who was 16-years-old, for purposes of having sex.  Petitioner

26   traveled to San Bernardino County in January 2003, without permission from his parole agent, to

27   ────────────

28        [3]For example, Jimmy would earn 10 points by allowing Petitioner to grind on him, 50
     points by allowing Petitioner to digitally penetrate his anus, 100 points by allowing Petitioner to
     take off his pants, and 1,000 points by allowing Petitioner to do anything he wanted. [Id.]

meet Marcus.  After buying Marcus a video game, Petitioner and Marcus drove to a secluded area where they began kissing and fondling one another.  They drove to a more secluded area, but Petitioner's car became stuck in the sand.  When a deputy sheriff stopped to assist them, Petitioner and Marcus initially lied about their relationship, telling the deputy they were cousins.  Upon further investigation, the deputy learned the two were not related and had been kissing and touching each other's genitals.  According to the deputy, Marcus looked young, between the ages of 14 and 16.  Petitioner asserted he believed Marcus was 19-years-old. [Id., p. 7.]

Psychologists Clark Clipson and Harry Goldberg both testified at the December 2006 trial. Drs. Clipson and Goldberg  first evaluated Petitioner in January 1999, to determine whether he should be committed to the DMH under the SVPA.  [Reporter's Transcript ("RT"), Lodgment No. 10, at 96, 722.]  At that time, both Dr. Clipson and Dr. Goldberg determined that Petitioner did not meet the criteria of a sexually violent predator.  [RT 99, 722-723.]  Drs. Clipson and Goldberg evaluated Petitioner again following his 2003 arrest in San Bernardino County, at which time they both determined Petitioner met the SVP criteria.  Both doctors concluded Petitioner had the diagnosed mental disorders of pedophilia and antisocial personality disorder.  [Cal. Ct. App. Op., p. 8; RT 115-122, 132-138, 730-752.]  Both doctors also concluded Petitioner had a high risk of re-offending and that the sexual offenses were predatory in nature.  [Cal. Ct. App. Op., p. 9; RT 161-169, 752-778.]

Psychologist Dr. Ted Donaldson testified on behalf of Petitioner at trial.  Dr. Donaldson opined Petitioner never had a sexual preference for children and was not a pedophile.  [Cal. Ct. App. Op., p. 9; RT 854-856.]  Dr. Donaldson challenged the reliability of the methods used by Drs. Clipson and Goldberg to evaluate Petitioner's risk of re-offending, and opined that any assessment of risk was moot because Petitioner did not have a diagnosable mental disorder.  [Cal. Ct. App. Op., p. 9.]

Petitioner also testified at trial.  Petitioner denied sodomizing any of the four young victims.  [Cal. Ct. App. Op., p. 9; RT 947-950.]  After his release from prison in August 1993, Petitioner became a manager at KFC and took home study courses to earn his bachelor's degree in business administration. [Cal. Ct. App. Op., p. 9; RT 960-61.]  Petitioner did not believe he was

required to register as a sex offender when he was released from prison in August 1999 because he was living in a homeless shelter and thought he had completed his sentence.  [Cal. Ct. App. Op., pp. 9-10; RT 982-985.]  Petitioner met Marcus online, in a Gay 20s chat room, and believed Marcus was 19.  [Cal. Ct. App. Op., 10; RT 994-997.]  Petitioner testified his parole agent gave him verbal permission to travel to San Bernardino to contest a traffic ticket that a friend got while driving Petitioner's car.  He arranged to meet Marcus while he was in San Bernardino taking care of the ticket.  [RT 998-1000.]  Petitioner met Marcus at a liquor store, and then drove to a store to buy Marcus a video game as a Christmas gift.  [RT 999-1001.]  The two then drove to a desolate area where they touched and fondled each other. Because they kept getting interrupted by passing all- terrain vehicles, they moved to a more isolated area, but Petitioner's car got stuck in the sand. [RT 1002-1006.]  When Petitioner and Marcus were walking toward the police station to try to get help, Marcus first told Petitioner he was only 16-years-old.  [RT 1006-1007.]  Because Petitioner knew he would be in trouble for being with a 16-year-old, the two decided to tell the police they were cousins.  [RT 1007.]

### *Legal Standard*

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a) (West 2006) (emphasis added).  A federal habeas corpus petition must allege a deprivation of one or more federal rights to present a cognizable claim pursuant to § 2254.  A state's interpretation of its laws or rules provides no basis for federal habeas corpus relief when no federal constitutional question arises.  Estelle v. McGuire, 502 U.S. 62, 68 (1991) (federal habeas corpus relief does not lie for errors of state law, and federal courts may not reexamine state court determinations on state law issues).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "worked substantial changes to the law of habeas corpus."  Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).  As amended by AEDPA, 28 U.S.C. § 2254(d) now reads:

1

2

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

3

4

> (1) resulted in a decision that was <u>contrary to</u>, or involved an <u>unreasonable application of</u>, clearly established Federal law, as determined by the Supreme Court of the United States; or

5

6

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

7

28 U.S.C.A. § 2254(d) (West 2006) (emphasis added).

8

A state court's decision may be found to be "contrary to" clearly established Supreme

9

Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in

10

[the Court's] cases" or (2) "if the state court confronts a set of facts that are materially

11

indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from

12

[the Court's] precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000); <u>Lockyer v. Andrade</u>,

13

538 U.S. 63, 75-76 (2003). A state court decision involves an "unreasonable application" of

14

clearly established federal law, "if the state court identifies the correct governing legal rule from

15

this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case,"

16

or, "if the state court either unreasonably extends a legal principle from our precedent to a new

17

context where it should not apply or unreasonably refuses to extend that principle to a new context

18

where it should apply." <u>Williams</u>, 539 U.S. at 407; <u>Andrade</u>, 538 U.S. 63, 75-76.

19

"[A] federal habeas court may not issue the writ simply because the court concludes in its

20

independent judgment that the relevant state-court decision applied clearly established federal law

21

erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable."

22

<u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted).

23

Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United

24

States Supreme] Court's decisions." <u>Williams</u>, 529 U.S. at 412; <u>Andrade</u>, 538 U.S. 63, 75-76; <u>see</u>

25

<u>Smith v. Patrick</u>, 508 F.3d 1256 (9th Cir. 2007) (discussing meaning of "clearly established federal

26

law").

27

///

28

///

///

- 7 -

### ***Discussion***

*1.*       ***Does Petitioner's indeterminate commitment to the custody of the Department of Mental Health violate his Constitutional right to due process of law?***

Petitioner argues that his indeterminate commitment to the DMH violates his right to due process. Petitioner argues (a) his retrial should have been governed by the prior version of the SVPA and (b) the SVPA, as amended by Proposition 83, violates due process because it provides inadequate mechanisms for judicial review.

a.  Application of amended SVPA to Petitioner's retrial

Petitioner's retrial commenced on December 4, 2006, after the amended SVPA took effect. Under the amended law, Petitioner was committed to the DMH for an indefinite term, rather than for the two year term for which he would have been eligible under the prior law. Petitioner argues his right to due process was violated by the trial court's application of the amended SVPA to justify his indeterminate commitment.

The California Court of Appeal rejected Petitioner's claim, noting:

> In an SVPA proceeding, the statutory law that applies is that which is in effect at the time of trial. (*People v. Carlin* (2007) 150 Cal. App. 4th 322, 328, fn. 2 ["We apply the statute in effect at the time of appellant's trial"].)

[Cal. Ct. App. Op., p. 30.]

Petitioner argues the court erred in applying the new indeterminate commitment provision to his retrial because "[w]hether or not deemed 'punishment,' the result of applying Jessica's Law to petitioner was increased hardship ...." [Petition, p. 6b.]  This is essentially an ex post facto argument which, as explained below with regard to ground 2, does not entitle Petitioner to relief.

b.  Adequacy of mechanism for judicial review

The prior version of the SVPA provided that SVPs would be committed to the DMH for a term of two years.  If the state wished to keep an individual in custody after the two year term expired, it bore the burden of again showing beyond a reasonable doubt that the person was a SVP. Under the amended SVPA, however, a person adjudged to be a SVP "shall be committed for an indeterminate term" to the custody of the DMH.  Cal. Welf. & Inst. Code § 6604.  Although the DMH must examine the individual's mental condition at least once every year, the state need not return to court to obtain a new order of commitment. Cal. Welf. & Inst. Code § 6605(a).

A person who has been adjudged a SVP, therefore, now has only two avenues for release. First, the DMH examiner may determine the person's condition has changed so that either he no longer meets the definition of a SVP, or he could safely be conditionally released to a less restrictive living arrangement. Cal. Welf. & Inst. Code § 6605(b). The DMH, then, must authorize the person to petition the court for conditional release or unconditional discharge as appropriate. If the court finds there is probable cause to believe the person's mental disorder has so changed that he is not a danger to society, then the court must set a full hearing. The court must grant relief after such hearing unless the state proves beyond a reasonable doubt that the person still meets the definition of a SVP. Cal. Welf. & Inst. Code § 6605(c) and (d).

Alternatively, a committed person may at any time petition the court for conditional release or unconditional discharge without the recommendation of the DMH. Cal. Welf. & Inst. Code § 6608(a). Before the court will order a new full-blown hearing, however, the committed individual must show, by a preponderance of the evidence, that he "would not be a danger to others due to his or her diagnosed mental disorder while under supervision and treatment in the community." § 6608(d). Petitioner argues the statute's indeterminate term of commitment to the DMH, coupled with the limited opportunity for judicial review, violates due process. The California Court of Appeal rejected Petitioner's claim, finding neither the indeterminate term of commitment nor the limited mechanisms for judicial review violates due process. [Cal. Ct. App. Op., p. 30-32.]

It is clear that "commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Addington v. Texas, 441 U.S. 418, 425 (1979). "[The] State must have 'a constitutionally adequate purpose for the confinement'." Jones v. United States, 463 U.S. 354, 361 (1983) (quoting O'Connor v. Donaldson, 422 U.S. 563, 574 (1975)). The Supreme Court has held that "in certain narrow circumstances" states may provide "for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety." Kansas v. Hendricks, 521 U.S. 346, 357 (1997). The Court has "consistently upheld such involuntary commitment statutes provided the confinement takes place pursuant to proper procedures and evidentiary standards." Therefore, it "cannot be said

that the involuntary civil confinement of a limited subclass of dangerous persons is contrary to our understanding of ordered liberty."  Id.

However, due process "requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."  Jackson v. Indiana, 406 U.S. 715, 738 (1972).  Although a finding of dangerousness alone is ordinarily insufficient to justify indefinite commitment, dangerousness coupled with some additional factor such as mental illness or mental abnormality demonstrates "a likelihood of such conduct in the future if the person is not incapacitated."  Hendricks, 521 U.S. at 358 (citing Heller v. Doe, 509 U.S. 312, 323 (1993)).

Here, a jury found beyond a reasonable doubt that Petitioner was a SVP within the meaning of Cal. Welf. & Inst. Code § 6600(a)(1).  This required the jury to find that Petitioner "ha[d] been convicted of a sexually violent offense against one or more victims and ... ha[d] a diagnosed mental disorder that makes [him] a danger to the health and safety of others in that it is likely that he ... will engage in sexually violent criminal behavior."  Cal. Welf. & Inst. Code § 6600(a)(1).  Given such finding, the state has "a constitutionally adequate purpose" for Petitioner's commitment to the custody of the DMH.  Jones, 463 U.S. at 361; see also Hendricks, 521 U.S. at 363 (finding that measures to "restrict the freedom of the dangerously mentally ill" constitute "a legitimate nonpunitive governmental objective.").

Furthermore, the procedures for judicial review, set forth in Cal. Welf. & Inst. Code §§ 6605 and 6608, are sufficient to insure that Petitioner's confinement will not continue beyond the point when he no longer suffers from a mental disorder or is no longer dangerous.  Petitioner argues the statutory provisions for review are constitutionally inadequate because § 6605 leaves to the discretion of the DMH whether to recommend conditional release and § 6608 shifts the burden to the committed individual to demonstrate he is no longer mentally ill.[4]  In combination, Petitioner argues the SVPA now "creates an unacceptable risk that a SVP detainee who no longer qualifies as a sexually violent predator will have his commitment continued."  [Petition, p. 6f.]

---

[4]Petitioner also argues § 6608 does not provide an adequate mechanism for judicial review because, unlike the DMH-initiated procedure set forth in § 6605, § 6608 does not explicitly provide a detainee the right to an expert.  The California Supreme Court, however, has held that when an indigent individual petitions for release  on his or her own under § 6608, the court is required to appoint an expert.  People v. McKee, 47 Cal. 4th 1172, 1193 (2010).

1    Petitioner's argument that California's SVPA provides inadequate mechanisms for judicial

2    review is necessarily foreclosed by the Supreme Court's decision in <u>Jones</u>, 463 U.S. at 361.  In

3    <u>Jones</u>, a criminal defendant found not guilty by reason of insanity was committed to a mental

4    hospital under a District of Columbia code section for an indefinite period of time, until he

5    established, by preponderance of the evidence, that he was no longer mentally ill.  463 U.S. at 358.

6    The Supreme Court rejected the petitioner's due process challenge to the statute's indeterminate

7    period of confinement.  The court first noted the verdict of not guilty by reason of insanity

8    established both dangerousness and mental illness.  <u>Id</u>. at 365.  The Court did not directly discuss

9    the statutory provision that placed the burden on the committee to establish he was no longer

10   mentally ill.  However, the Court concluded the procedures for judicial review were sufficient to

11   insure the confinement lasted only as long as petitioner's continuing illness and dangerousness.

12   <u>Id</u>. at 369.  In light of <u>Jones</u>, Petitioner cannot demonstrate that the California Court of Appeal's

13   decision rejecting his due process claim was contrary to clearly established Federal law.

14   <u>2.</u>    <u>Does Petitioner's indeterminate commitment to the custody of the DMH render the SVPA
     punitive in nature in violation of the ex post facto clause?</u>

15

16   Petitioner argues California's SVPA, as amended by Proposition 83, is punitive in nature

     and thus violates the ex post facto clause.  The California Court of Appeal rejected Petitioner's
17
     argument.[5]
18
     The ex post facto clause of the United States Constitution prohibits states from
19
     "retroactively alter[ing] the definition of crimes or increas[ing] the punishment for criminal acts."
20
     <u>Collins v. Youngblood</u>, 497 U.S. 37, 43 (1990).  "The categorization of a particular proceeding as
21
     civil or criminal 'is first of all a question of statutory construction'."  <u>Hendricks</u>, 521 U.S. at 361
22
     (quoting <u>Allen v. Illinois</u>, 478 U.S. 364, 368 (1986)).  If the legislature intended to establish
23
     "civil" proceedings, courts ordinarily defer to such intent unless the "party challenging the statute
24
     provides 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect
25

26   _____

     [5]The California Court of Appeal's opinion in <u>People v. Johnson</u>, 162 Cal. App. 4th 1263,
27   1287-89 (2008), upon which the Court of Appeal relied in denying Petitioner's appeal, was
     withdrawn pending the California Supreme Court's decision of <u>People v. McKee</u>. However, the
28   California Supreme Court in <u>McKee</u> recently adopted similar reasoning to find that California's
     SVPA, as amended by Proposition 83, does not violate the federal constitutional prohibition
     against ex post facto laws.  47 Cal. 4th at 1193-1195.

1    as to negate [the State's] intention' to deem it 'civil'." <u>Hendricks</u>, 521 U.S. at 361 (quoting <u>United</u>

2    <u>States v. Ward</u>, 448 U.S. 242, 248-49 (1980)).

3        In <u>Hendricks</u>, the Supreme Court reviewed a statutory scheme quite similar to California's

4    pre-Proposition 83 SVPA, and found such act was civil and did not implicate the ex post facto

5    clause.  The Court noted that commitment under the Kansas act "does not implicate either of the

6    two primary objectives of criminal punishment: retribution or deterrence."  521 U.S. at 362.  The

7    Court also rejected the idea that the statutory scheme was punitive based upon the potential that

8    the confinement could become indefinite.  "Far from any punitive objective, the confinement's

9    duration is instead linked to the stated purposes of the commitment, namely, to hold the person

10   until his mental abnormality no longer causes him to be a threat to others."  <u>Id</u>. at 363.

11       The Supreme Court in <u>Seling v. Washington</u>, 531 U.S. 250 (2001), also reviewed

12   Washington's civil commitment for sexual predators. The Washington statute, like California's

13   current SVPA, provided that after the initial commitment, the person is entitled to an annual

14   examination of his mental condition. "If that examination indicates that the individual's condition

15   is so changed that he is not likely to engage in predatory acts of sexual violence, state officials

16   must authorize the person to petition the court for conditional release or discharge."  <u>Id</u>. at 255.

17   Upon review, the Court found the legislative scheme was not punitive in nature.  <u>Id</u>. at 262.

18       Taken as a whole, California's current SVPA is not significantly distinguishable from the

19   Kansas and Washington statutes which the Supreme Court in <u>Hendricks</u> and <u>Seling</u> found to be

20   civil in nature.  The California Supreme Court has repeatedly stressed the civil nature of a SVPA

21   commitment.  <u>Hubbart v. Superior Court</u>, 19 Cal. 4th 1138, 1171 (1999); <u>McKee</u>, 47 Cal. 4th at

22   1194.  Although the SVPA now provides for indefinite commitment to the DMH, rather than for a

23   term of two years, the statutory scheme still provides mechanisms for judicial review to insure

24   such commitment continues only for as long as a person meets the SVP criteria of mental

25   abnormality and dangerousness.  Proposition 83's amendment of the SVPA, extending committed

26   individuals' period of confinement indefinitely until such time as they no longer suffer from a

27   mental abnormality or no longer pose a danger, does not render California's statutory scheme

28   punitive in nature.  Thus, Petitioner is not entitled to relief under the ex post facto clause.

3. _Does Petitioner's indeterminate commitment to the DMH violate the prohibition against cruel and unusual punishment?_

Petitioner argues his indeterminate commitment to the DMH violates the Eighth Amendment's prohibition against cruel and unusual punishment.  The California Court of Appeal rejected Petitioner's argument, once again noting the SVPA is not civil, and not criminal in nature.  As explained above in the discussion of Petitioner's ex post facto clause claim, the Court agrees that the California SVPA's commitment procedures are civil, rather than criminal, in nature.  Therefore, Petitioner's claim that his indefinite confinement violates Eighth Amendment's cruel and unusual punishment clause is foreclosed by <u>Seling</u>, 531 U.S. at 262.

4. _Is Petitioner entitled to relief based upon the single subject rule?_

Petitioner argues Proposition 83 violated the "single subject rule" of the California Constitution.  Federal habeas corpus relief may be granted only based upon a violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254; <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991).  Petitioner's argument in no way implicates the Constitution, laws, or treaties of the United States, and thus Petitioner is not entitled to habeas relief on this claim.

5. _Does Petitioner's indeterminate commitment to the DMH violate equal protection?_

Petitioner argues that individuals like himself, committed to the DMH under the SVPA, are treated unequally vis-a-vis similarly situated individuals committed to the DMH as mentally disordered offenders ("MDO") (under Cal. Penal Code § 2960, _et seq._) or after they have been found not guilty by reason of insanity ("NGI").  Under Penal Code § 2972, MDOs are committed for a period of one year, after which time the State must file a petition for continued treatment under § 2970, and must again prove beyond a reasonable doubt that the patient has a severe mental disorder which renders him or her dangerous.  There are also significant differences in the statutory scheme for civil commitment of those found not guilty by reason of insanity.  Unlike SVPs, NGIs may not be confined beyond the maximum term to which they would have been sentenced for the underlying offense unless the district attorney extends the commitment for two years by proving that the person continues to present a substantial danger because of mental illness.  Cal. Penal Code § 1026.5(b)(1).  Petitioner argues these three groups of individuals subject to civil commitment are all similarly situated, such that the State must demonstrate a

compelling interest advanced by the disparate treatment of SVPs.  The California Court of Appeal rejected Petitioner's argument, finding that SVPs are not similarly situated to MDOs and NGIs. [Cal. Ct. App. Op., p. 34.]

The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

> The initial discretion to determine what is "different" and what is "the same" resides in the legislatures of the States. A legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill.  In applying the Equal Protection Clause to most forms of state action, we thus seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose.

Plyler v. Doe, 457 U.S. 202, 216 (1982).  However, the general rule of deference gives way, and courts apply a strict scrutiny standard, where a statute classifies by race, alienage or national origin or where the law impinges on personal rights protected by the Constitution.  City of Cleburne, 473 U.S. at 440.  Where a state law differentiates based upon other characteristics beyond an individual's control, such as gender or illegitimacy, the courts apply an intermediate heightened standard of review.  Id.

The Court is aware that the California Supreme Court believes it is proper to apply the strict scrutiny standard in evaluating disparate treatment among civil commitment statutes.  People v. Green, 79 Cal. App. 4th 921, 924 (2000) ; McKee, 47 Cal. 4th at 1197 (quoting In re Moye, 22 Cal. 3d 457, 465 (1978))[6].  Clearly established Federal law, however, has consistently evaluated civil commitment statutes such as the California SVPA under either a rational basis or an intermediate heightened scrutiny standard.  Baxstrom v. Herold, 383 U.S. 107, 114 (1966) (evaluating civil commitment statute to determine whether its classifications were "arbitrary"); Jackson, 406 U.S. at 729 (evaluating whether the state provided "reasonable justification" for

---

[6]Although the California Supreme Court in McKee purported to apply a strict scrutiny standard, it ultimately remanded to the trial court to "determine whether the legislative distinctions in classes of persons subject to civil commitment are reasonable and factually based."  47 Cal. 4th at 1210.  It appears the California courts do not apply an "intermediate" level of "heightened" scrutiny in the equal protection context, which likely accounts for the difference in terminology applied by the California Supreme Court in McKee.

1   applying a more lenient commitment standard, and a more stringent standard of release, for certain

2   civil committees); Jones, 463 U.S. at 363, fn. 10 (suggesting in dicta that it was appropriate to

3   apply a rational basis scrutiny in distinguishing between civil commitment and commitment of

4   insanity acquittees); United States v. Sahhar, 56 F.3d 1026, 1028 (9th Cir. 1995) (noting that

5   Supreme Court has never established the proper standard of review and applying heightened

6   scrutiny); Young v. Weston,192 F.3d 870, 876 (9th Cir. 1999), *rev'd on other grounds*, Seling v.

7   Young, 531 U.S. 250 (2001) (affirming district court's analysis of equal protection challenge to

8   Washington's sexually violent predator statute under heightened scrutiny standard).  Because the

9   Court finds California's SVPA withstands scrutiny under the heightened equal protection standard,

10  the Court need not determine exactly which of the two standards is proper under clearly

11  established Federal law.

12      In determining whether California's SVPA violates equal protection under the heightened

13  scrutiny standard, this Court must first ask whether SVPs are similarly situated to MDOs and

14  NGIs.  Rosenbaum v. City and County of San Francisco, 484 F.3d 1142, 1153 (9th Cir. 2007) (first

15  step in equal protection analysis requires court to identify the classification of groups which are

16  similarly situation).  If these different categories of committees are similarly situated, the Court

17  must determine whether the SVPA's differential treatment of SVPs, vis-a-vis similarly situated

18  civil committees, "is substantially related to a sufficiently important governmental interest."  City

19  of Cleburne, 473 U.S. at 441.

20      The California Court of Appeal in this case held that SVPs are not similarly situated to

21  MDOs and NGIs for purposes of equal protection analysis. However, the California Supreme

22  recently reversed course and held that these three types of civil committees are similarly situated

23  for purposes of equal protection analysis.  McKee, 47 Cal. 4th at 1203, 1207.  This Court need not

24  decide whether the California Supreme Court's conclusion in McKee, that the different categories

25  of committees are similarly situated for equal protection analysis, is supported by clearly

26  established Federal law.  Even assuming SVPs, MDOs, and NGIs are similarly situated for

27  purposes of equal protection analysis, the Court finds the state's differential treatment of SVPs "is

28  substantially related to a sufficiently important government interest."

The state of California, upon its initial passage of the SVPA in 1995, made the following

legislative findings relating to the particularized danger which SVPs pose to society:

> The Legislature finds and declares that a small but extremely dangerous group of sexually violent predators that have diagnosable mental disorders can be identified while they are incarcerated. These persons are not safe to be at large and if released represent a danger to the health and safety of others in that they are likely to engage in acts of sexual violence. The Legislature further finds and declares that it is in the interest of society to identify these individuals prior to the expiration of their terms of imprisonment. It is the intent of the Legislature that once identified, these individuals, if found to be likely to commit acts of sexually violent criminal behavior beyond a reasonable doubt, be confined and treated until such time that it can be determined that they no longer present a threat to society.

> The Legislature further finds and declares that while these individuals have been duly punished for their criminal acts, they are, if adjudicated sexually violent predators, a continuing threat to society. The continuing danger posed by these individuals and the continuing basis for their judicial commitment is a currently diagnosed mental disorder which predisposes them to engage in sexually violent criminal behavior. It is the intent of the Legislature that these individuals be committed and treated for their disorders only as long as the disorders persist and not for any punitive purposes.

[Historical and Statutory Notes, foll. Cal. Welf. & Inst. Code § 6600.]  In addition, Proposition 83

provided the following findings and declarations supporting the amendments to the civil

commitment procedures for SVPs:

> Sex offenders have very high recidivism rates. According to a 1998 report by the U.S. Department of Justice, sex offenders are the least likely to be cured and the most likely to reoffend, and they prey on the most innocent members of our society. More than two-thirds of the victims of rape and sexual assault are under the age of 18. Sex offenders have a dramatically higher recidivism rate for their crimes than any other type of violent felon.

[Voter Information Guide, Gen. Elec., text of Prop. 83.]

Given the elevated risk of recidivism for sex offenders, the lower likelihood that they will

be cured from their mental disorder which makes it "likely that [t]he[y] ... will engage in sexually

violent criminal behavior," Cal. Welf. & Inst. Code § 6600(a)(1), and the particular vulnerability

of the victims of sex offenses, the state of California has chosen to impose different standards for

judicial review following initial civil commitment of SVPs.  The differential treatment of SVPs,

vis-a-vis NGIs and MDOs in California, is substantially justified by the state's legitimate interest

in protecting the public from violent sexual offenses.  Federal courts have consistently found the

same factors cited by the legislature in enacting the SVPA justify dissimilar treatment of SVPs vis-

a-vis other types of civil committees.  Young, 192 F.3d at 876; Hubbart, 379 F.3d at 781-82.

1  Petitioner has not pointed to any clearly established Federal law, holding that equal protection is

2  violated under similar circumstances. Therefore, the Court finds Petitioner is not entitled to relief

3  on his equal protection claim.

4  <u>*6.*</u>      *Were Petitioner's Fifth and Fourteenth Amendment due process rights violated when the trial court refused to enforce his plea bargain?*

5
6  Petitioner argues he and the prosecution entered into an oral plea agreement during the

   June 4, 2003 probable cause hearing in the San Diego County Superior Court. Petitioner argues the
7
   parties agreed that the District Attorney would dismiss the San Diego County SVPA petition if
8
   Petitioner received any prison time for the San Bernardino offense.  Petitioner argues the trial
9
   court violated his right to due process when it refused to enforce his plea bargain.  The California
10
   Court of Appeal reviewed the trial court record, including the record of the evidentiary hearing
11
   with regard to this issue, and concluded the parties did not enter into a plea agreement.
12
   "[A] criminal defendant has a due process right to enforce the terms of his plea
13
   agreement." <u>Buckley v. Terhune</u>, 441 F.3d 688, 694 (9th Cir. 2006) (citing <u>Santobello v. New</u>
14
   <u>York</u>, 404 U.S. 257, 261-62 (1971)).  "The construction and interpretation of state court plea
15
   agreements 'and the concomitant obligations flowing therefrom are, within broad bounds of
16
   reasonableness, matters of state law'." <u>Id.</u> at 695 (quoting <u>Ricketts v. Adamson</u>, 483 U.S. 1, 6 fn.3
17
   (1987)).  In determining whether a plea agreement existed in this case, the California Court of
18
   Appeal applied general principles of contract law as set forth by the California Supreme Court in
19
   <u>People v. Shelton</u>, 37 Cal. 4th 759, 767 (2006):
20
21              A negotiated plea agreement is a form of contract, and it is interpreted
         according to general contract principles.  "The fundamental goal of contractual
22       interpretation is to give effect to the mutual intention of the parties. If contractual
         language is clear and explicit, it governs. On the other hand, '[i]f the terms of a
23       promise are in any respect ambiguous or uncertain, it must be interpreted in the
         sense in which the promisor believed, at the time of making it, that the promisee
24       understood it.'  "The mutual intention to which the courts give effect is determined
         by objective manifestations of the parties' intent, including the words used in the
25       agreement, as well as extrinsic evidence of such objective matters as the
         surrounding circumstances under which the parties negotiated or entered into the
26       contract; the object, nature and subject matter of the contract; and the subsequent
         conduct of the parties.

27  [Cal. Ct. App. Op., p. 11 (internal citations omitted).]  The state court's determination that there

28  was not a plea agreement is a factual finding entitled to deference in the absence of clear and

1   convincing evidence to the contrary. <u>Brown v. Poole</u>, 337 F.3d 1155, 1160 fn.2 (9th Cir. 2003)

2   (state court's relevant factual determinations regarding the existence of a plea agreement, which

3   are reasonable "in light of the evidence presented in the state court proceedings," are entitled to

4   deference on habeas review); <u>Mitleider v. Hall</u>, 391 F.3d 1039, 1046 (9th Cir. 2004) (state court's

5   factual findings are presumed correct in the absence of clear and convincing evidence to the

6   contrary).

7         Upon review of the state court record, including the transcript of the June 4, 2003 hearing

8   at which Petitioner claims the parties entered into a plea agreement as well as the transcript of the

9   September 15 and 18, 2006 evidentiary hearing on Petitioner's motion to enforce the plea

10   agreement, the Court concludes Petitioner is not entitled to relief.  At the probable cause hearing

11   on June 4, 2003, defense counsel, Victor Eriksen, acknowledged that the San Bernardino case did

12   not "necessarily trump" the San Diego County SVPA proceedings.  Mr. Erikson asked the court to

13   sign a transport order, allowing Petitioner to be transferred to San Bernardino County to face the

14   pending charges there.  Mr. Erikson told the court that Petitioner agreed to waive time for trial on

15   the SVPA petition, and asked the court to set a status conference for December of 2003.  Mr.

16   Erikson thereafter commented that the San Bernardino proceedings could render the San Diego

17   County SVPA petition proceedings moot: "[T]hat way[,] by December [,] we'll know hopefully

18   what the progress is of the San Bernardino criminal prosecution, and at that time we can report to

19   the court because obviously, if there is a conviction in that case I think this SVP [petition] will be

20   moot."  [Supplemental Lodgment No. 11, Transcript of June 4, 2003 proceedings, at 1.]

21         After a break in the proceedings, the trial court addressed the possibility that a new SVPA

22   petition might be filed against Petitioner: "[I]f he had a new princip[al] commit that was verified

23   and that would be off calendar because as soon as he's done his time on that new prison commit

24   there would be a new –."  [<u>Id</u>. at 2.]  Before the court could finish that sentence, however, the

25   prosecutor interrupted and interjected "– I would dismiss this petition." [<u>Id</u>.]  The court found

26   probable cause to sustain the petition, and then released Petitioner to the custody of the San

27   Bernardino County Sheriff to address the charges pending in that county.

28         At the next hearing in the San Diego County Superior Court, on December 2, 2003, Mr.

1    Eriksen discussed the fact the San Bernardino "third strike case" was set for pretrial on

2    December 12, 2003.  The prosecutor noted the parties had talked about continuing the trial on the

3    SVPA petition until after conclusion of the "three strikes matter" in San Bernardino County,

4    because that case "would probably resolve this one."  Eriksen agreed, stating "[t]his one will

5    probably be moot unless [Petitioner] beats that case."  [Cal. Ct. App. Op., at 14.]  Petitioner's

6    counsel requested a continuance until early March 2004.  Petitioner thereafter agreed to a series of

7    continuances through March 25, 2005.

8            In early March 2005, Petitioner was sentenced to a term of 32 months on the San

9    Bernardino County matter.  At a hearing in San Diego County Superior Court on March 25, 2005,

10   Petitioner's new counsel, Richard Gates, stated it was his understanding from the file that the

11   District Attorney would be dismissing the SVPA petition because Petitioner received prison time

12   on the San Bernardino matter.  [Transcript of March 25, 2005 hearing, at 5-6.]  The prosecutor

13   responded that the SVPA proceedings had been continued because, depending upon the sentence

14   Petitioner received from the San Bernardino court, the petition could become moot.  The

15   prosecutor noted, however, that because Petitioner had been in custody more than 32-months

16   before  the San Bernardino court imposed its sentence, Petitioner was "basically ... a turnaround."

17   [Id. at 6.] Because Petitioner would be released from custody shortly, it was necessary to go

18   forward with the continued SVPA petition proceedings.  The trial court denied Petitioner's request

19   to dismiss the SVPA petition, and set trial for April 8, 2005.  [Id. at10.]  Petitioner agreed to a

20   series of continuances thereafter, resulting in a new trial date of September 15, 2006.

21           On September 15, 2006, when trial was set to commence, Petitioner filed a written motion

22   to enforce a purported agreement entered into at the June 4, 2003 probable cause hearing, to

23   dismiss the SVPA petition if Petitioner received any time on the San Bernardino County matter.

24   The court held an evidentiary hearing on the motion on September 15 and 18, 2006.  Petitioner

25   testified, as did his former attorney, Mr. Eriksen, and the original prosecutor, Kathryn Gayle.

26   Petitioner testified he believed after the June 6, 2003 probable cause hearing that if he received

27   any prison time on the San Bernardino case, the SVPA petition would be dismissed.  [Transcript of

28   September 15, 2006 hearing, at 45-47.]  Petitioner also introduced a copy of a letter he received

from Mr. Eriksen following the December 2, 2003 San Diego Superior Court hearing, which stated "The DA agrees that if you receive ANY prison term in the San Bernardino case, the SVP petition will be moot and they will move to dismiss it."  Petitioner testified he would not have pleaded no contest in the San Bernardino matter if he had known the SVPA petition would remain pending in San Diego.  Mr. Eriksen also testified he understood that the District Attorney would dismiss the SVPA petition if Petitioner received any prison time at all on the San Bernardino County matter. [Id. at 73-74.]

The original prosecutor, Ms. Gayle, testified that she believed the SVPA might be moot depending on the outcome of the San Bernardino County matter because Petitioner faced a 25-year-to-life sentence on the charges in that court.  [Transcript of September 15, 2006 hearing, at 139-141.]  If Petitioner was convicted and sentenced under the three strikes law, it would have been unnecessary to pursue the SVPA petition.  Ms. Gayle testified that she only agreed to dismiss the SVPA petition in the event there was a new petition filed when Petitioner was to be released from the San Bernardino County sentence.  Ms. Gayle did not intend to guarantee a dismissal of the San Diego SVPA petition, nor did she enter into any agreement for Petitioner to plead guilty to the San Bernardino County charges in exchange for dismissal of the SVPA petition. [Id. at 143.]

Based upon these facts, the state court's determination that there was no binding plea agreement is neither contrary to nor an unreasonable application of clearly established federal law. As the Court of Appeal noted, one fact critical to understanding the exchange between counsel at the June 6, 2003 probable cause hearing is that Petitioner was facing a three strikes case in San Bernardino County which could have resulted in a sentence of 25-years-to-life.  The record shows that the prosecutor never promised Petitioner she would dismiss the SVPA petition if he received any prison time on the San Bernardino County matter. It was Petitioner's counsel, not the prosecutor, who stated that the SVPA petition would be "moot" in the event Petitioner was convicted in the San Bernardino County matter.  The prosecutor stated she would dismiss the SVPA petition only after the court suggested there would likely be a new petition filed if Petitioner was convicted of the charges pending in San Bernardino County.  The parties' statements at the June 6, 2003 hearing did not give rise to an enforceable agreement.  As the Court of Appeal noted,

1    "[a]t most, the objective circumstances established that if Robinson's admitted San Bernardino

2    offense resulted in the filing of a new SVPA petition or a lengthy prison commitment, the pending

3    SVPA petition at issue here might be dismissed as moot."  [Cal. Ct. App. Op., at 28.] Neither of

4    these circumstances arose in this case, and the state court's determination that there was no

5    enforceable plea agreement is entitled to deference.

6    *7.*     *Did the trial court violate Petitioner's rights under the Fifth, Sixth, and Fourteenth*
         *Amendments when it failed to grant a mistrial?*

7
8            Petitioner subpoenaed Marcus, the boy with whom he engaged in sexual contact in San

     Bernardino County, to appear as a witness on his behalf at the SVPA trial.  Marcus initially

9    appeared in the San Diego Superior Court on December 4, 2006, the date set forth on the

10   subpoena.  The court ordered him to return to court to testify on December 11, 2006.  Marcus did

11   not return to court on that date and the court, despite issuing a bench warrant for his arrest, was

12   unable to secure his appearance at trial. After Petitioner testified, his attorney moved for a mistrial

13   on the grounds that Marcus failed to appear to testify. Counsel argued Marcus would have testified

14   that the sexual contact with Petitioner was consensual. Counsel also argued the jury would have

15   had the opportunity to see what Marcus looked like and to see that he did not look like a child.

16   [Transcript of December 12, 2006 proceedings, at 1137-1140.] Petitioner's counsel did not request

17   a continuance to allow him to obtain Marcus's attendance at trial.  The trial court denied the

18   motion for mistrial, finding the jury had heard unequivocal testimony that Petitioner's contact with

19   Marcus was consensual. The California Court of Appeal agreed, finding Petitioner could

20   demonstrate no prejudice. [Cal. Ct. App. Op., at 40-41.]

21           The erroneous exclusion of critical, corroborative defense evidence may violate both the

22   Sixth Amendment right to present a defense, and the right to due process. See DePetris v.

23   Kuykendall, 239 F.3d 1057, 1062 (9th Cir.2001) (citing Chambers v. Mississippi, 410 U.S. 284,

24   294 (1973) and Washington v. Texas, 388 U.S. 14, 18-19 (1967)). However, a defendant does not

25   have an unfettered right to offer evidence that is incompetent, privileged or otherwise inadmissible

26   under standard rules of evidence. Id. (quoting Taylor v. Illinois, 484 U.S. 400, 410 (1988)). The

27   exclusion of evidence does not violate the Due Process Clause unless "it offends some principle of

28   justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."

1   Montana v. Egelhoff, 518 U.S. 37, 43 (1996) (quoting Patterson v. New York, 432 U.S. 197,

2   201-02 (1977)) (internal quotations omitted).  The exclusion of evidence also does not violate the

3   Sixth Amendment unless the excluded testimony is both material and favorable to the defense.  See

4   United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982).

5        The California Court of Appeal's decision rejecting Petitioner's claim was not contrary to

6   or an unreasonable application of clearly established federal law.  As an initial matter, because

7   Petitioner's counsel never requested a continuance of the trial, Petitioner is now barred from

8   asserting that the trial court violated his rights by failing to grant a continuance. Cal. Ct. App. Op.,

9   p. 40 (concluding Petitioner's claim that he should have been granted a continuance was forfeited

10  because he did not request a continuance); Davis v. Woodford, 384 F.3d 628, 654 (9th Cir. 2004)

11  (when a state relies on adequate and independent ground to deny a federal claim, prisoner is barred

12  from raising such claim on habeas review).

13       Furthermore, Petitioner was not entitled to a mistrial.  At trial, Dr. Clipson testified that

14  Petitioner told him he thought Marcus was a 19-year-old adult.  On the other hand, Deputy Cesar

15  Chacon of the San Bernardino Sheriff's Department testified Petitioner told him he knew Marcus

16  was only 16 years of age.  [Transcript of December 6, 2006 trial, at 442.]  Marcus's testimony

17  regarding how old he told Petitioner he was would have been cumulative, and Petitioner has not

18  established the testimony would have been favorable to his defense.[7]  Furthermore, with regard to

19  the issue of consent, Deputy Chacon testified that Marcus told him he was not afraid of Petitioner

20  and that what happened between them was consensual.  [Id. at 447-48.]  Thus, Marcus's failure to

21  testify as to the issue of consent was also not prejudicial.  Finally, to the extent Petitioner sought to

22  establish that Marcus did not look young, the trial was held almost four years after the contact

23  leading to the San Bernardino County charges.  There is nothing to suggest Petitioner requested

24  that Marcus bring to trial photos showing what he looked like in January of 2003.  Under such

25  circumstances, the trial court's failure to grant a mistrial did not violate Petitioner's rights.

26

27  _____

28       [7]The prosecution also wanted Marcus to appear as a witness at trial, because from all of the
pretrial statements they expected Marcus would testify Petitioner knew before they met in San
Bernardino County in January of 2003 that Marcus was only 16 years old.

1    8.      _Did the trial court violate Petitioner's right to due process by refusing to exclude_
2            _inflammatory evidence?_

3            Petitioner argues the trial court should have excluded inflammatory evidence regarding

4    (a) the nature of his sexual acts with Jason and Jimmy, (b) expert testimony on the ultimate issue

5    of the case, (c) the probation report in the original 1992 case that details the multiple counts for

6    which Petitioner was charged, (d) Petitioner's prior burglaries, (e) Petitioner's failure to register as

7    a sex offender in July 2000, and (f) Petitioner's parole violation.  The California Court of Appeal

8    rejected Petitioner's claim, finding that the trial court did not err in admitting the evidence and that

9    any error was not prejudicial.  [Cal. Ct. App. Op., at 42-43.]

10           In order to establish that the erroneous admission of evidence at trial violated his right to

11   due process, Petitioner here must show the error rendered the trial "arbitrary and fundamentally

12   unfair."  Alberni v. McDaniel, 458 F.3d 860, 865 (9th Cir. 2006) (citing Estelle v. McGuire, 502

13   U.S. 62, 70 (1991).  Contrary to Petitioner's arguments, the evidence to which Petitioner objects

14   was both relevant and not unduly prejudicial.  The prosecution had the burden of proving that

15   Petitioner was a SVP, which required it to show he had previously been convicted of a sexually

16   violent offense against one or more victims, that he had a diagnosed mental disorder which made

17   him dangerous, and that it was likely he would engage in sexually violent behavior again in the

18   future.  Cal. Penal Code § 6600(a)(1).  Each of the items of evidence to which Petitioner objects

19   was relevant to the prosecution's proof of its case.  In addition, reviewing the trial testimony as a

20   whole, it cannot be said that the items of evidence to which Petitioner objects were any more

21   inflammatory than much of the evidence that was admitted through the testimony of the examining

22   mental health experts.  Petitioner is not entitled to relief on his due process claim relating to the

23   admission of evidence.

     9.      _Cumulative error_

24           Finally, Petitioner argues he is entitled to relief based upon the cumulative effect of errors

25   committed during his trial.  "The combined effect of multiple trial errors may give rise to a due

26   process violation if it renders a trial fundamentally unfair, even where such error considered

27   individually would not require reversal."  Parle v. Runnels, 505 F.3d 922, 928 (9th Cir. 2007)

28   (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  Here, there was no violation of

- 23 -

1    Petitioner's federal constitutional rights.  Thus, Petitioner is not entitled to relief on his cumulative

2    error claim.

3                                              *Conclusion*

4            For the reasons set forth herein, the Court DENIES the petition for a writ of habeas corpus.

5    Upon review, the Court concludes that "reasonable jurists" would find debatable the issues raised

6    by Petitioner's due process and equal protection claims related to California's indeterminate

7    commitment process for SVPs (Petitioner's claims 1 and 5). Slack v. McDaniel, 529 U.S. 473,

8    484 (2000).  Thus, the Court GRANTS Petitioner a certificate of appealability on those two

9    claims. 28 U.S.C. § 2253(c) (certificate of appealability appropriate where petitioner has made "a

10   substantial showing of the denial of a constitutional right").  The Court DENIES a certificate of

11   appealability with regard to Petitioner's remaining claims.

12           **IT IS SO ORDERED**.

13   **DATED:  May 27, 2010**

14                                              *Irma E. Gonzalez*
                                                _____
15                                              **IRMA E. GONZALEZ, Chief Judge**
                                                **United States District Court**

16

17

18

19

20

21

22

23

24

25

26

27

28

09cv346